**In re John E. ADEN and Jeanne A. Aden a/k/a Jeanne Kosur, Debtors.**

**Bankruptcy No. 95–B–12396.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 18, 1999.

[redacted]

Edward Kuleck, Ottawa, IL, for Movant or Plaintiff.

James R. Lindig, Chicago IL, for Respondent or Defendant.

Thomas B. Sullivan, Trustee.

JOAN H. LEFKOW, Bankruptcy Judge.

### RULING ON MOTION TO REOPEN CASE AND RELIEF FROM FINAL JUDGMENT ORDER

The movant, Jeanne Aden, asks the court to vacate the discharge entered October 8, 1995 in this joint Chapter 7 case, on the basis that her then-husband, John Aden, signed the joint petition and otherwise pursued the bankruptcy without her knowledge or permission, thereby committing a fraud upon the court. She alleges in her Amended Motion to Reopen Case and [For] Relief from Judgment Order[1] that she never participated in the preparation of the petition including hiring or meeting the attorney of record on the petition, that she never had knowledge that a petition was to be filed, and that she did not appear at the meeting of creditors or in court or otherwise participate in the bankruptcy proceeding. She alleges that she first learned of the bankruptcy (and that it had been filed on her behalf) in June, 1998. Movant alleges that these facts constitute a fraud on the court and that she is entitled to have the case reopened, the discharge vacated and the case dismissed as to her. The court set the matter for evidentiary hearing and requested the case trustee, Thomas B. Sullivan, to investigate and appear at the hearing.

1. The original motion was filed February 9, 1999, the amended motion on April 23, 1999.

2. The debtor in this case, John Aden, identified himself at the hearing as Jonathan Edgar Aden.

Based on the testimony of the witnesses and the exhibits received in evidence, the court having weighed the evidence and assessed the credibility of the witnesses, makes the following findings of fact.

#### SUMMARY OF THE EVIDENCE

During the summer of 1995, John[2] E. Aden and Jeanne C. Aden,[3] a married couple with children, were in the midst of financial and marital problems. A joint bankruptcy petition was filed June 19, 1995 seeking to discharge approximately $10,500 of unsecured debt. How this filing came about is disputed in several respects. John testified that he went to attorney James R. Lindig for the purpose of preparing the petition, and he is "pretty sure" that Jeanne was with him on at least one occasion in the lawyer's office. He later received a letter from Mr. Lindig notifying them to come into his office to sign the documents and on June 9 he alone went to the attorney's office to sign. He testified that, although Jeanne knew about the appointment at the lawyer's office, she did not want to go with him perhaps because she was embarrassed about the bankruptcy or perhaps for any number of other possible reasons. John admits that he signed Jeanne's name every time it appears on the bankruptcy petition. John testified that his attorney was present and knowingly witnessed John's signing of his wife's name as well as his own.

Jeanne testified that she did not know during June, 1995, that a bankruptcy petition was being filed. She conceded that they had a lot of bills and that at some point the bills stopped coming. Nevertheless, she testified that she told John to take care of the bills and she trusted that he had done so. She did not identify any source of funds by which John might have paid the bills. She denied going to Mr.

3. Because they have the same last name, these witnesses will be referred to by their given names.

Lindig's office either for preparation of the petition or to sign the documents.

James Lindig testified that he prepared the petition at issue. He had represented John on several other matters previously and had met Jeanne only once at a deposition in one of her husband's cases about January of 1994. He did not recall whether he had met with one or both of the Adens in connection with filing the petition and he did not recall the circumstances of the day John signed the documents. He stated that on occasions when he is not present when clients come in to sign documents, he might leave them with his secretary or another attorney in the office.

Trustee Sullivan testified that based on his records, the meeting of creditors was held on July 20, 1995, and both debtors appeared with their attorney. A no asset report was returned to the court within a day or two. According to Trustee Sullivan's regular procedure, had only one of the debtors appeared at the first meeting, he would have deposed that debtor and adjourned the meeting to another date to allow the joint debtor to come in. If neither debtor had appeared for the meeting of creditors, he would have moved to dismiss the case. From this he infers that both debtors appeared at the initial meeting of creditors.

John and Jeanne agree, however, that Jeanne did not attend the meeting. John further testified that his attorney was not present, either. Jeanne testified that she did not receive notice of the meeting. Mr. Lindig was unable to confirm whether he did or did not attend the creditors' meeting.

The couple separated in August, 1995. John moved in with a woman whom he later married, Stacy Aden, who resided in LaSalle, Illinois. Jeanne and the children moved in with her mother in rural Streator, Illinois. In October 1995, when the discharge entered, Mr. Lindig sent a copy of the discharge to John at his LaSalle address and has no record of having sent a copy to Jeanne.

In September, Jeanne initiated divorce proceedings. Mr. Lindig filed an appearance on John's behalf in December, 1995. Darrell K. Seigler represented Jeanne. According to Mr. Lindig, without doubt Jeanne's lawyer knew of the joint bankruptcy. A letter from Seigler to Lindig in evidence dated May 15, 1997, refers to pre-separation marital debt which remains. Jeanne argues that the reference to pre-separation debt indicates that the bankruptcy was unknown to Seigler; Mr. Lindig testified that he interpreted the language as merely referring to the possibility that some debt might have remained despite the bankruptcy; and the trustee believes that the reference to remaining debt indicates that Seigler recognized that the (non-remaining) debt had been discharged. Although this letter is inconclusive about whether Mr. Seigler knew of the bankruptcy, it certainly does not preclude his knowledge. On October 10,1997, Mr. Seigler sent a List of Stipulated Joint Exhibits to Mr. Lindig, which list included "Copy of Discharge of Joint Debtors in Bankruptcy of Adens."

On June 9, 1998, John testified in court in Jeanne's presence in the divorce case. When asked whether this was the first time she was aware that the bankruptcy had been filed, Jeanne responded, ". . . that I was made aware that it was joint." Jeanne also conceded that her lawyer gave her copies of most of the court documents and counsel's letters in her case. A court document dated June 29, 1998, filed by Mr. Seigler states on the front page, "The Respondent filed bankruptcy, apparently for the parties, prior to their separation." Jeanne testified to a conversation in September 1998 in which she asked John for a copy of the discharge order, which she received thereafter.

### CONCLUSIONS OF FACT AND LAW

■ Based on the preponderance of the evidence, the court concludes that John filed a joint bankruptcy proceeding naming Jeanne as co-debtor without her knowl-

edge, that he went to the meeting of creditors apparently with a woman who posed as his wife, and that he alone received the order of discharge, which he did not share with Jeanne. The court further concludes that Jeanne did not learn of the joint bankruptcy until considerably after the discharge, perhaps as late as June 1998. In reaching these conclusions, the court finds that John's testimony in various respects is not credible, most importantly, his statement that Jeanne knew of the bankruptcy at the time John initiated the bankruptcy. The court finds Trustee Sullivan entirely credible. The court finds Jeanne substantially credible.

Although from a lawyer's perspective, Jeanne's ostrich approach to her debt problem seems foolish, the court finds that she likely did not know what John had done about the debt. Jeanne had not had legal counsel concerning the bankruptcy. It is reasonable to infer that she suspected that John had filed the bankruptcy, for himself only, and that this had resolved the debt problem for the family. The evidence is inconclusive whether Jeanne learned the truth as late as June, 1998, or whether she learned it from her attorney earlier. Because Jeanne did not call Mr. Seigler, however, the court may assume that his testimony may have placed her knowledge earlier than that date. *See P.R. Mallory & Co. v. National Labor Relations Board*, 400 F.2d 956, 958 (7th Cir.1968) (Failure to produce evidence which, under the circumstances, would be expected gives rise to a presumption against the party failing to produce it). Nevertheless, even the earliest evidence of her knowledge places it well after the discharge was entered in October 1995. As a result, the court finds that John knowingly and intentionally deceived Jeanne, the trustee, and this court in pursuing a bankruptcy in Jeanne's name.

 The next question is what the consequences should be for Jeanne. A debtor has no right to voluntarily vacate a discharge. *See In re Wyciskalla*, 156 B.R. 579 (Bankr.S.D.Ill.1993) (Court is without authority, either statutory or equitable, to grant debtor's request to revoke his discharge where debtor alleged that counsel had misinformed him about the advisability of bankruptcy relief and that he had paid all his discharged debt). The court, however, does have some equitable power to vacate a discharge under Federal Rule of Civil Procedure 60(b) because the "old inherent power to reconsider bankruptcy orders has been merged into [that rule]." *In re Met–L–Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir.1988); *see Wyciskalla*, 156 B.R. at 580–81. Under Rule 60(b)(6), the court may grant relief from judgment (1) for "any ... reason justifying relief from the operation of the judgment" if a motion is brought within a "reasonable time." The rule expressly "does not limit the power of a court to ... set aside a judgment for fraud upon the court."

While the court may have some power to vacate the discharge, it cannot agree with Jeanne that this motion, brought at least eight months after the discovery of the fraud, has been brought within a reasonable time, particularly where Jeanne was being actively represented by counsel at the time of the discovery. A reasonable person who was truly disturbed by the information would have sought legal advice as to what the consequences of the discharge were for her and what recourse she might have. Because Jeanne did not call her lawyer, Mr. Seigler, as a witness to explain that she sought legal advice or referral from him about the fraud, the court will infer that his testimony would have been detrimental in this regard. Jeanne pled in her original "Motion to Reopen Case and [For] Relief From Final Judgment Order" that she first learned of the bankruptcy when she went to obtain a home loan in December, 1998. Motion at 2, ¶ 6. Although the court in no way condones the conduct of John, it is persuaded that Jeanne is motivated by her realization that the bankruptcy on her record at this time has negative consequences as well as

the benefit of being relieved of a heavy burden of debt, a benefit she enjoyed for more than three years before filing the motion. Once this inference is made, Jeanne is in a similar position to debtor Wyciskalla, who voluntarily paid his debts, yet the court concluded it would not "use its equitable authority to overturn a chapter 7 order of discharge in situations where a debtor has reconsidered the wisdom of the original filing...." *Wyciskalla*, 156 B.R. at 582. From the creditors' perspective, because the debts were incurred several years ago, they would be unlikely to benefit at all from pursuing collection of small claims if the discharge were vacated. The court concludes that fundamentally, this motions rests on the fact that Jeanne has reconsidered the wisdom of accepting the benefits of the judgment of discharge of which she became aware at least eight months before moving for relief. This is not grounds for vacating a discharge.

For these reasons, the Amended Motion to Reopen Case and [For] Relief from Final Judgment Order is denied.